IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SHERRIE JOHNSON, as administratrix  )
of the Estate of ALQUWON JOHNSON,  )
deceased,                          )
          Plaintiff,              )
v.                                 )
                                 )    Case No. 2:12cv392-WHA
RYAN CONNER; SONYA MAYO;           )
BARBOUR COUNTY; GEORGE PARHAM;)           (wo)
BARBOUR COUNTY COMMISSION, et al., )
                                 )
          Defendants.             )

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Motion to Dismiss Third Amended Complaint filed by Barbour County and the Barbour County Commission ("County Defendants") (Doc. #30), and a Motion to Dismiss Third Amended Complaint filed by Ryan Conner, Sonya Mayo, and George Parham (collectively "Individual Defendants") (Doc. #32).

The Plaintiff filed a Complaint and two amended Complaints in the Circuit Court of Barbour County, Alabama, Clayton Division.  After the Second Amended Complaint was filed, the Defendants filed a Notice of Removal on April 30, 2012, stating that this court has federal question subject matter jurisdiction.  No Motion to Remand was filed.  The court has federal question jurisdiction over the federal claims, and supplemental jurisdiction over the state law claims.

Motions to Dismiss which had been filed before the Second Amended Complaint were denied as moot.  A Partial Motion to Dismiss was filed after the Second Amended Complaint was filed, which the court denied, and a Motion to Dismiss Second Amended Complaint was

granted in part and denied in part. The Plaintiff was given additional time in which to amend her Second Amended Complaint to plead additional facts in attempt to state a plausible claim for failure to provide funding for medical attention, surveillance equipment, and staff.

The Plaintiff filed a Third Amended Complaint. The Plaintiff brings claims for negligence against the Individual Defendants (Count One); negligent hiring, training, supervision against all Defendants (Count Two); violation of state statutory law against Individual Defendants (Counts Three and Seven);[1] violation of state statutory law against the County Defendants (Count Four); supervisory liability pursuant to 42 U.S.C. § 1983 against Defendant Conner (Count Five); violation of the fourteenth amendment by Individual Defendants (Count Six); violation of the fourteenth amendment by County Defendants (Count Eight); and fictitious defendants (Count Nine).

The County Defendants filed a Motion to Dismiss Counts Four and Eight.[2] Defendants Ryan Conner ("Conner"), Sonya Mayo ("Mayo"), and George Parham ("Parham") (collectively "the Individual Defendants") moved to dismiss the state law claims in Counts One, Two, and Three, and the federal claims in Counts Five, Six, and Seven.

For reasons to be discussed, the Motions are due to be GRANTED in part and DENIED in part.

## II.  MOTION TO DISMISS STANDARD

---

[1] Count Seven identifies a violation of federal civil rights, but because it invokes a state statute, the Individual Defendants have treated it as a state law claim. The court will address it as if it relies on both state and federal law.

[2] Although Count Two includes Barbour County, Doc. #29 at p.14, the County Defendants have not moved to dismiss this count.

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).   In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See  Ashcroft v. Iqbal,* 556 U.S. 662 (2009).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.   The factual allegations  "must be enough to raise a right to relief above the speculative level."  *Id*. at 555.

### III.  FACTS

The allegations of the Plaintiff's Third Amended Complaint, relevant to the Motions to Dismiss, are as follows:

This case arises from the death of an inmate in Barbour County Jail.   The Plaintiff, Sherrie Johnson, alleges that her son, Alquwon Johnson ("Decedent Johnson"), suffered from a documented history of mental illness.  She alleges that he was arrested and taken to the Barbour County Jail on January 31, 2011.   He remained in jail until his suicide on June 4, 2011.

Defendant Conner is the Jail Administrator for the Barbour County Jail.  Defendant

Mayo is an employee of the Barbour County Jail.  She is alleged to be the officer in charge of the Special Needs Unit at the time of Decedent Johnson's detention.  Defendant Parham is a jailer at the Barbour County Jail.

The Third Amended Complaint alleges that Conner and Parham knew that Decedent Johnson had a history of mental issues, and that the state court had ordered a psychiatric evaluation for Johnson. The jail's file indicated that Johnson was under a psychiatrist's care and taking psychoactive medications.   The Plaintiff had also gone to the jail and advised Parham that Decedent Johnson had a doctor's appointment because he was suffering from depression and needed to get back on medication.

The Third Amended Complaint alleges that Conner, Parham, and Mayo were responsible for administering Decedent Johnson's medicine, but failed to ensure that he took his medicine on a daily basis.

On May 5, 2011, while in the general population of the jail, Decedent Johnson displayed a hostile demeanor and was moved to a private holding cell toward the front of the jail.

On May 6, 2011, Decedent Johnson attempted to commit suicide with a bed sheet, but was found by Parham, and Parham placed him on suicide watch.  His holding cell was stripped of bed linens and a mattress until bed time.   Decedent Johnson was not taken to a medical doctor for treatment.

The Third Amended Complaint alleges that the Policy and Procedures Manual of the Jail was not followed.

Decedent Johnson was then moved to a Special Needs Unit cell.  The Individual Defendants were aware of the attempted suicide with a bed sheet.

The Third Amended Complaint alleges that, according to Mayo, Decedent Johnson would sometimes skip or refuse to take his prescribed medicine, or the jail would not have the medication available.

On June 3, 2011, Mayo placed Decedent Johnson on lock down for a rule violation. Lock down involves confining the prisoner to his cell by himself for 23 hours.  He was placed on lock down as a disciplinary measure by Defendant Mayo even though she failed to prepare the required report and hold a hearing.   When Decedent Johnson was placed on lock down, his cell door was kept shut, making it difficult for anyone to see in the cell or for him to be closely monitored on a regular basis.  Mayo also did not remove dangerous items from the cell such as bedding.  On June 4, 2011, while on lock down in his cell, Decedent Johnson hanged himself with a bed sheet.

The Third Amended Complaint alleges that the Barbour County Jail was understaffed, did not have video surveillance equipment, and that Barbour County failed to properly fund medical treatment.   The Third Amended Complaint states that the jail was understaffed as a result of insufficient funding by Barbour County.  The Third Amended Complaint further alleges that Barbour County provided an allotted amount for medical treatment as part of the budget, but that the funding was inadequate to meet the medical needs of inmates.

## IV.  DISCUSSION

The court first addresses the grounds for dismissal asserted by the County Defendants, and then will address the Motion to Dismiss filed by the Individual Defendants.

### A.  Motions to Dismiss Third Amended Complaint by County Defendants

The County Defendants move to dismiss the state law claim in Count Four and the federal law claim in Count Eight.  The federal claim is a claim of deliberate indifference to Decedent Johnson's needs and the state law claim is for violation of  Ala. Code §11-14-10[3] and §14-6-19.[4]  The County Defendants have addressed together the merits of the federal and state law claims, and have articulated the lack of a private right of action as an additional ground for dismissal as to the state law claims.  The Plaintiff has responded without differentiating between the theories for liability under federal and state law.   Therefore, the court first addresses the arguments with regard to the merits of the claims, and then will turn to the question of the private right of action as to the state law claim.

#### 1.  Merits of Federal and State Law Claims Against the County Defendants

The County Defendants argue that the Plaintiff has failed to plead any additional facts which state a plausible claim for the claims previously dismissed without prejudice for failure to provide funding for surveillance equipment, failure to provide medical attention, and lack of funding for staff.   They further contend that evidence of Barbour County's budget adds additional facts which demonstrate that the failure to provide funds for necessary medicine is not a plausible claim in this case.

#### a.  Failure to Provide Surveillance Equipment

---

[3] Ala. Code §11-14-10 provides, in part, that "[e]ach county within the state shall be required to maintain a jail within their county."

[4] Ala. Code §14-6-19 provides that "[n]ecessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves."

Under Eleventh Circuit law, a county which is aware of a combination of dangerous conditions can be held liable for failing to fund surveillance under certain circumstances, but a county will have violated a plaintiff's rights only "if its failure to maintain the Jail constituted deliberate indifference." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1027 (11th Cir. 2011) (*en banc*). Deliberate indifference means that the County must be aware of a substantial risk of serious harm and not take reasonable measures to alleviate the risk. *Id.* at 1027.

Having been given an opportunity to plead additional allegations in support of her claims, the Plaintiff has alleged that Conner, the Jail Administrator, has stated during his deposition that the special needs unit as well as other blocks should have surveillance cameras. (Doc. #29 at ¶57). The Plaintiff also alleges that the Jail Administrator must make requests to Barbour County and the Barbour County Commission for things such as surveillance cameras. There is, however, no allegation that such a request was made and denied. The only allegation of knowledge on the part of the County Defendants is that they knew or should have known that surveillance cameras were needed. (Doc. #29 at ¶121). This is conclusory, and does not identify the same type of reports of issues as were relied on by the Eleventh Circuit in *Marsh*. 268 F.3d at 1027. The court cannot conclude that the Third Amended Complaint states plausible claims based on the failure to provide surveillance equipment.

### b. Failure to Provide Medical Treatment

### i. Medical Attention

The Third Amended Complaint alleges that an allotted amount is provided to the sheriff's office for medical treatment, including medical attention, but that that amount was inadequate to meet the medical needs of the prisoners, and Johnson did not receive needed medical attention.

(Doc. #29 at ¶60).  The Third Amended Complaint also states that Conner deliberately failed to get Decedent Johnson the medical treatment required and failed to ensure that he received the medical treatment required.   It further alleges that Parham and Conner should have notified a mental health authority but did not, and Decedent Johnson was never taken to a medical doctor.

Although having been given an opportunity to plead additional facts, there is no allegation in the Third Amended Complaint that Parham's or Conner's failure to obtain medical treatment, characterized in the Third Amended Complaint as a "deliberate" failure, was due to a lack of funding, or even that the treatment was not sought by jail officials because it was not available.  Although the Third Amended Complaint states that the funding was inadequate and then says "[c]onsequently, Johnson did not receive the required medical attention . . ." that allegation is conclusory, and cannot form the basis of a plausible claim for relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Accordingly, the court cannot conclude that the Plaintiff states a plausible claim against on the part of Barbour County based on funding for medical attention.

ii.  Necessary Medicines

The court has previously denied a Motion to Dismiss as to this aspect of the Plaintiff's claim against the County Defendants.  Unlike the conclusory allegations regarding the medical attention claim, which did not include facts to demonstrate that medical attention was not sought because of funding, there are facts alleged in the Third Amended Complaint that the Individual Defendant who disbursed medicines at times did not give Decedent Johnson his necessary medication because the jail would not have the medication available.  (Doc. #29 at ¶38).   Unlike

the claim regarding surveillance equipment, there is also an allegation of previous complaints of a failure to provide medication for mental illness, which was resolved by settlement agreement, but which the Plaintiff alleges was not being complied with when Decedent Johnson was at the jail. (*Id.* at ¶¶16, 17).

Barbour County has argued in response to the Third Amended Complaint that because the Plaintiff has referred to the County's budget in the Third Amended Complaint, it has attached the budget to its response, and that the budget demonstrates that $66,000 was allocated for drugs and medical supplies.   The Plaintiff does not argue that the court ought not consider the attachment, but instead argues that the mere fact that the County allocated funding for the jail facility is not enough to dismiss the claim.   The court agrees.   The Plaintiff has not alleged that no funds were allocated for medicine, but instead states that funding was inadequate so that at times necessary medicines were not available at the jail to be given to Decedent Johnson. Therefore, these claims are not due to be dismissed merely on the basis that some funds were allocated for medicine.[5]

### c.  Failure to Provide Staff

In the Third Amended Complaint, the Plaintiff has pled facts that at the time of Decedent Johnson's suicide, the Barbour County Jail was at or near capacity level, the jails needs six people on each of three shifts to run "efficiently," the jail was understaffed at the time of Decedent Johnson's suicide, the jail was understaffed as a result of insufficient funding, and the County Defendants knew or should have known that the jail needed six employees on duty, but

---

[5]   The court will evaluate the sufficiency of the evidence of deliberate indifference based on this theory if called upon to do so in a properly-filed motion for summary judgment.

only provided enough funding for four employees.   The Third Amended Complaint further
states that there are typically four people on duty at the jail.   While there is an allegation that
there were four instead of six staffers due to lack of funding, the allegation in the Third
Amended Complaint is that six staffers were required to allow the jail to run "efficiently," not
that they were needed for the monitoring for the protection of inmates, or that the County
Defendants had knowledge of such need.   Furthermore, the Third Amended Complaint also
states that Decedent Johnson was placed in a cell with the door closed which made it "difficult to
see inside the cell or for him to be closely monitored on a regular basis." (Doc. #29 at ¶41).   The
court concludes that the Plaintiff has not stated a claim of deliberate indifference based on lack
of funding for staff, and has not pled facts to establish causation for purposes of her state law
claim.  *See Marsh*, 268 F.3d at 1027; *Gaines v. Choctaw Cnty. Comm'n*, 242 F. Supp. 2d 1153,
1161 (S.D. Ala. 2003)

Accordingly, the Motion to Dismiss is due to be DENIED as to the claims based on
failure to provide medicine, but GRANTED as to the state and federal claims for failure to
provide staff, medical attention, and surveillance cameras.

### 2.  Private Right of Action for State Law Claim

As noted previously, the County Defendants have asserted as an additional ground for
dismissal of the state law claim in Count Four that there is no private right of action for a
violation of Ala. Code §11-14-10 and §14-6-19.

In *King v. Colbert Cnty.*, 620 So. 2d 623 (Ala. 1993), the court held that a lower court
erred in granting summary judgment to a county because "§11-14-10 places an affirmative duty
upon the County to maintain the jail and keep it in a state of repair . . . ."   The court included in

its discussion a recitation of the elements of the claim, including a breach of duty by the county which was a proximate cause of injury.  *Id.* at 626.  Other courts have denied motions to dismiss as to claims against counties based on a violation of Ala. Code §14-6-19 and §11-14-10.  *See Gaines*, 242 F. Supp. 2d at 1159; *Shaw v. Coosa Cnty. Comm'n*, 330 F. Supp. 2d 1285, 1289 (M.D. Ala. 2004).  The court, therefore, will not dismiss the claim in Count Four on that basis.

### B. Motion to Dismiss Third Amended Complaint by Individual Defendants

At the outset, the court notes that the Plaintiff has challenged the Motion to Dismiss filed by the Individual Defendants as untimely.  The Plaintiff points out that the Individual Defendants filed an Answer in response to the Plaintiff's Second Amended Complaint, and did not file a Motion to Dismiss until after the Plaintiff had been given leave by the court to file a Third Amended Complaint to re-plead federal claims against the County Defendants.   The Individual Defendants respond that they have sought State immunity as to the state law claims, which they characterize as an issue of subject matter jurisdiction, and have sought qualified immunity as to the federal claims.   Given that an Answer or other responsive pleading was required in response to the Third Amended Complaint, and given the nature of the defenses raised by the Individual Defendants, the court will consider the motion.[6]  *See Skrtich v. Thornton*, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002) (stating that a motion to dismiss based on qualified immunity which was filed after an answer, and without an intervening amendment complaint, could be construed as a Fed. R. Civ. P. 12(c) motion).

### 1.  Immunity as to State Law Claims

---

[6] The Plaintiff has suffered no prejudice through the court's decision to consider the Motion because, in addition to raising the issue of timeliness, the Plaintiff has addressed the merits of the motion in her response.

The Individual Defendants contend that the state law claims in Counts One, Two, and Three are due to be dismissed because they have the same absolute immunity to state law claims as do sheriffs, citing the court to amended Ala. Code §14-6-1[7] and §36-22-3.[8]  They state that these sections changed Alabama law as it was stated by the Alabama Supreme Court in *Ex parte Shelley*, 53 So. 3d 887 (Ala. 2009).[9]

The Alabama Supreme Court has not yet applied the amended statutes.  The only case which appears to have addressed the issue of immunity of sheriff's employees after the

---

[7]        The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.

Ala. Code §15-6-1.

[8]        Any of the duties of the sheriff set out in subsection (a) or as otherwise provided by law may be carried out by deputies, reserve deputies, and persons employed as authorized in Section 14-6-1 as determined appropriate by the sheriff in accordance with state law. Persons undertaking such duties for and under the direction and supervision of the sheriff shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law.

Ala. Code §36-22-3(b).

[9]  The *Ex parte Shelley* court declined to extend State immunity to any sheriff's employees other than deputy sheriffs.  *Ex parte Shelley*, 53 So. 3d 887, 897 (Ala. 2009).

amendments became effective stated that the "2011 amendments are not applicable in this case." *See Ex parte Burnell*, 90 So. 3d 708, 714 n.2 (Ala. 2012).

Having been given an opportunity to address the issue, the Plaintiff urges this court to find that *Ex parte Burnell* should be read to say that the amendments did not apply in that case because they became effective after the conduct at issue. The Plaintiff further points to the presumption under Alabama law against retroactivity of statutes in the absence of clear legislative intent. *See, e.g., City of Brewton v. White's Auto Store, Inc.*, 362 So. 2d 226 (Ala. 1978).

The Individual Defendants contend that the statement in *Ex parte Burnell* is dicta, and may not apply here anyway because, while the conduct at issue in the instant case occurred before the effective date of the amendments, the Complaint was filed after the effective date. They point out that immunity is not only from liability, but also from suit.

As the Individual Defendants acknowledge, the applicability of a recently-enacted statute generally depends on when the incident giving rise to the claims occurred. *See Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994). Given that general rule, and given the presumption against retroactivity in the absence of legislative intent under Alabama law, this court interprets the Alabama Supreme Court's statement in *Ex parte Burnell,* that the 2011 amendments did not apply in that case, to mean that the recently-enacted immunity amendments do not apply to conduct which occurred before their effective date.[10]

The Individual Defendants also contend that Counts Three and Seven are due to be

_____

[10] This court is bound to apply state law, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and should there be state law development on this issue during the pendency of this case, will apply it accordingly.

dismissed because there is no private right of action against them under Ala. Code §11-14-10 and §14-6-19.[11]

Unlike the claims against counties recognized in cases such as *King v. Colbert Cnty.,* 620 So. 2d 623, 625 (Ala. 1993) and *Gaines v. Choctaw Cnty. Comm'n*, 242 F. Supp. 2d 1153, 1159 (S.D. Ala. 2003), based on statutory duties of counties, the claims asserted in Counts Three and Seven are claims against persons in their individual capacities.   The Plaintiff has cited no authority to establish that these statutes provide a private right of action against individuals. Accordingly, Count Three and the state law claim in Count Seven are due to be DISMISSED.[12] The case will proceed against the Individual Defendants on state law claims as alleged in Counts One and Two only.

### 2.   Federal Claims

The Individual Defendants move for dismissal of the federal claims against them in Counts Five, Six, and Seven of the Third Amended Complaint on the basis of qualified immunity.[13]

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir.1991).  As a

---

[11] As noted earlier, the claim in Count Seven appears to be a federal claim, but to the extent that it is a state law claim, as the Individual Defendants have characterized it, it is based on violation of the state statutes.

[12] The County Defendants have also moved to dismiss the fictitious parties in this case. The claim in Count Nine against fictitious defendants re-asserts the facts of paragraph 1-11 of the Third Amended Complaint, and brings only state law claims.  (Doc. #29 at p. 22).  The court will revisit this issue as to Counts One and Two if called upon to evaluate whether parties have been adequately identified so as to relate back to the filing of the original complaint.

[13] It appears that both Count Six and the federal claim in Count Seven allege deliberate indifference claims based on the same facts.

preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

When an inmate commits suicide while jailed, to prevail under section 1983 for violation of substantive rights, a plaintiff must show that the jail official displayed "deliberate indifference." *Snow ex rel. Snow v. City of Citronelle, AL,* 420 F.3d 1262, 1268 (11th Cir. 2005). Deliberate indifference is demonstrated if the defendant had (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; (3) by conduct that is more than mere negligence. *Id.* The Eleventh Circuit has further explained the standard to mean that an official must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that

the prisoner will commit suicide. *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008).

The qualified immunity inquiry in inmate suicide cases often is focused upon the jail official's reaction to a known risk of suicide. Other judges in this district have examined Eleventh Circuit law on this issue and concluded that "[b]eyond the basic duty that there be 'some level of action,' jailers' obligations to suicide prisoners have not been clearly defined." *Wallace v. Jackson*, 667 F. Supp. 2d 1267, 1273 (M.D. Ala. 2009) (quoting *Hollingsworth v. Edgar*, No. 2:04cv935-WKW, 2006 WL 2009104, at *7 (M.D. Ala. July 18, 2006)).

In this case, the Plaintiff argues that Conner, Mayo, and Parham all had subjective knowledge that Decedent Johnson was a suicide risk based on his previous suicide attempt and history of mental illness, among other facts. The Plaintiff states that she has alleged deliberate indifference to that risk in the form of a failure to provide medical treatment, failure to administer medications, and failure to provide adequate security measures by leaving him in a cell alone with bedding and without adequate checks, all in violation of jail policy.

The Individual Defendants argue that they are entitled to qualified immunity because they at least took some action to prevent Decedent Johnson's suicide.[14] In their brief, they point to the facts alleged in the Third Amended Complaint that on May 5, after Decedent Johnson acted aggressively, he was moved to a holding cell where he could be watched; Parham intervened when Decedent Johnson attempted to commit suicide by hanging himself on May 6; Parham placed Decedent Johnson on suicide watch; the bed sheets were removed until bedtime; and Decedent Johnson was transferred to a Special Needs unit. They argue that the mere fact

---

[14] The Individual Defendants do not appear to dispute that the Third Amended Complaint adequately alleges facts to show their knowledge of a strong likelihood of suicide. (Doc. #33 at p.12).

that he was placed in a unit by himself and was not continuously observed does not establish deliberate indifference under any clearly established law.  They finally argue that the earlier suicide attempt was a month prior to the successful attempt, and they could not permanently deprive Decedent Johnson of bedding.

It appears to the court that when the facts alleged in the Third Amended Complaint are viewed chronologically, a plausible claim of deliberate indifference has been stated.   As pointed out by the Individual Defendants, certain precautions to avoid suicide had been taken up until June 2011, including removing bed linens.  In June 2011, Defendant Mayo failed to properly disburse medication to Decedent Johnson *(Id.* at ¶39); on June 3, Decedent Johnson was placed on lock down in a cell by himself *(Id.* at ¶40); Mayo failed to follow jail policy in placing Johnson on lock down *(Id.)*; placing Decedent Johnson in a cell by himself violated jail policy for prisoners who are a suicide risk *(Id.* at ¶41); Decedent Johnson's cell door was kept shut so that it was difficult for him to be monitored *(Id.)*; and Mayo did not remove Decedent Johnson's bedding from the cell, even though the Individual Defendants knew that Johnson had previously attempted suicide with bed linens.  (*Id.* at ¶41, 43).  On June 4, 2011, Decedent Johnson tied a bed sheet to his neck and the cell window and hanged himself. (*Id.* at ¶42).

Under the facts as alleged, while some action was taken in May in light of Decedent Johnson's first suicide attempt, those actions were abandoned in June.  That is, although Decedent Johnson had been placed in a monitored cell without bed linens through May, in June, for disciplinary reasons, and contrary to policy, he was placed in a cell by himself by Mayo, in a cell that was difficult to monitor, with bed linens, and without being regularly given his medication.  The court concludes that these facts allege a plausible claim of deliberate

indifference under clearly established law against Individual Defendant Mayo.  *See*
*Hollingsworth*, 2006 WL 2009104 at *7 (stating that "any reasonable jail officer would have
known that the utter failure to provide adequate psychiatric or medical care, a safer cell without
the availability of implements of suicide, and supervision at regular intervals to a pretrial
detainee known to be suicidal could violate that inmate's constitutional rights.").

Although the Motion to Dismiss does not differentiate between grounds for dismissal as
to Defendants Mayo and Parham, it appears that the plausible claim of a violation of clearly
established law has only been stated against Mayo.  The allegations regarding Parham in the
Third Amended Complaint are a failure to notify a health professional after Decedent Johnson's
first suicide attempt in May, a failure to ensure medication was being given, Parham's
discovering Johnson during his first suicide attempt, and Parham placing Johnson on suicide
watch.   The court cannot conclude that those allegations, which constitute "some level of
action" in response to a threat of suicide, constitute deliberate indifference under clearly
established law.   The Motion to Dismiss, therefore, will be GRANTED as to Parham.

Additionally, Conner is not alleged to have personally participated in the actions which
Mayo allegedly took in June.   The actions taken by Conner alleged in the Third Amended
Complaint are that Conner failed to ensure that Decedent Johnson took his medication, and
Conner did not notify a mental health professional after Decedent Johnson's first suicide attempt.
During May, however, Decedent Johnson was placed on suicide watch, his cell was stripped of
bedding, and he was placed in the Special Needs Unit.  There is no allegation that Conner
participated in any of the June actions which served to remove Decedent Johnson from these
protections.

A separate claim of supervisory liability has been asserted against Conner in Count Five, however.  Conner moves to dismiss the supervisory liability claim asserted only against him, stating that he cannot be held vicariously liable for the acts of his subordinates, and the Third Amended Complaint does not allege a pattern of widespread abuse or customs or policies in place which constituted deliberate indifference.

Supervisory liability exists "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Braddy v. Florida Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).  A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact" and the failure has actually caused the injury of which the plaintiff complains.  *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1397 (11th Cir. 1994).

The Plaintiff states that the Third Amended Complaint alleges several acts against Conner which meet the threshold for supervisory liability including failures to follow jail procedures, and that Conner knew of Decedent Johnson's earlier suicide attempt.  The Plaintiff states that Conner failed to get Decedent Johnson medical treatment after his May suicide attempt and chose not to have officers trained on suicide prevention.  The Third Amended Complaint states that Conner knew or should have known that the level of training received by the jail staff was inadequate to prevent suicides, (Doc. #29 at ¶91), and that "Conner also made the choice not to train the Defendants on suicide prevention as required in the Policy and Procedure Manual to ensure Johnson was not successful at any future suicide attempts."  (*Id.* at

19

¶35).

The Plaintiff has not alleged facts to show that Mayo's actions were the result of improper training, nor alleged facts to support the conclusory statement that Conner knew or should have known that the level of training received by the jail staff was inadequate.  Because of the piecemeal filings of the Motions to Dismiss in this case, the Plaintiff has not yet been called upon to more specifically plead her claim of supervisory liability against Defendant Conner.  Accordingly, the court will give the Plaintiff an additional opportunity to plead additional facts, but this opportunity is limited to her claim for supervisory liability against Defendant Conner.

## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Dismiss filed by Barbour County and the Barbour County Commission (Doc. #30) is DENIED as to the state and federal claims in Counts Four and Eight based on failure to provide medication, and GRANTED as to all other theories of liability in Counts Four and Eight.

2.  The Motion to Dismiss filed by Ryan Conner, Sonya Mayo, and George Parham (Doc. #32) is GRANTED in part and DENIED in part as follows:

a.  The Motion is DENIED as to the state law claims in Counts One and Two against Parham, Conner, and Mayo, and is GRANTED as to state law claims in Counts Three and Seven. Count Three and the state law claim in Count Seven are DISMISSED with prejudice.

b.  The Motion is GRANTED as to the federal claims in Counts Six and Seven against Defendants Parham and Conner and those claims are DISMISSED with prejudice.

20

c.  The Motion is DENIED as to the federal claims against Defendant Mayo in Counts Six and Seven.

d.  The Motion is GRANTED as to the federal claim against Defendant Conner in Count Five of the Third Amended Complaint and that claim is DISMISSED without prejudice.

The Plaintiff is given until September 19, 2012, to file a restated Count Five, setting forth a factual basis for her claim of supervisor liability against Defendant Conner, if she can do so within the requirements of Rule 11 of the Federal Rules of Civil Procedure.  If the Plaintiff chooses to file such amendment, because of the multiple amended complaints in this case, she should not follow Local Rule 15.1, but instead should merely file a new Count Five which contains all factual allegations relevant to that claim, to replace the Count Five in the Third Amended Complaint.


 Done this 10th  day of Sept, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE